NEW CIVIL LIBERTIES ALLIANCE
KARA ROLLINS (Attorney ID 107002014)
Litigation Counsel
CALEB KRUCKENBERG
Litigation Counsel
(*Pro Hac Vice* Application Pending)
JENIN YOUNES
Litigation Counsel
(*Pro Hac Vice* Application Pending)
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| DIANTHE MARTINEZ-BROOKS<br><br>*Plaintiff*,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as U.S. Attorney General; U.S. DEPARTMENT OF JUSTICE; MICHAEL CARVAJAL in his official capacity as Director of the U.S. Bureau of Prisons; U.S. BUREAU OF PRISONS,<br><br>*Defendants*. | Civil Action No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**[JURY TRIAL DEMANDED]** |
|---|---|

Plaintiff Dianthe Martinez-Brooks by and through her attorneys alleges the following:

# LOCAL CIVIL RULE 10.1 STATEMENT

1. The mailing addresses of the parties to this action are:

Dianthe Martinez-Brooks
4 Darby Ct.
New Providence NJ 07974

Attorney General Merrick Garland
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Director Michael Carvajal
U.S. Bureau of Prisons
320 First St., NW
Washington, DC 20534

U.S. Bureau of Prisons
320 First St., NW
Washington, DC 20534

# INTRODUCTORY STATEMENT

2. The U.S. Bureau of Prisons has long retained discretion to decide where people sentenced to prison must serve their terms of custody. But Congress has provided directives for how the agency must apply its discretion. As the Third Circuit, and numerous other courts of appeals have recognized, Congress always meant for BOP to utilize alternatives to prison, such as residential reentry centers,

when it is clear that both the needs of the community and the programmatic needs of the prisoner warrant employing those alternatives.

3. After the COVID-19 pandemic began to ravage vulnerable detainees and staff in federal prison facilities, the U.S. Attorney General directed BOP to utilize its discretion to release people who clearly posed no danger to their communities but were at significant risk of serious illness or death. Recognizing the dire circumstances facing prisoners, Congress reaffirmed this discretion in emergency legislation under the CARES Act.

4. While thousands of non-violent and medically vulnerable people, like Dianthe Martinez-Brooks, have now been released to home confinement because of the COVID-19 pandemic, BOP recently declared its unnecessary and cruel intention to order those people back to prison as the pandemic abates. As Senator Chuck Grassley recently noted, BOP's policy contradicts Congress' goals of "reduc[ing] recidivism while ensuring public safety all while making sure to not burden the taxpayers."

5. But ignoring Congress' statements as well as the plain language of the CARES act, under which Ms. Martinez-Brooks was released, the U.S. Department of Justice insists that it has no choice but to reincarcerate these people, despite their success in utilizing modified custody arrangements. Ms. Martinez-Brooks will thus be forced to return to prison, even though imprisoning her again serves no

legitimate purpose and the CARES Act does not provide for her re-incarceration. DOJ and BOP's erroneous reading of their statutory authority will have profoundly unfair consequences for Ms. Martinez-Brooks and the many others in similar circumstances and must be repudiated by this Court.

## PARTIES

6. Plaintiff, Dianthe Martinez-Brooks, is a natural person and resident of the State of New Jersey.

7. Ms. Martinez-Brooks is currently serving a 48-month prison sentence in the custody of the U.S. Bureau of Prisons, overseen by the Residential Reentry Management New York field office, and serving it on home confinement in New Providence, New Jersey.

8. Defendant U.S. Attorney General Merrick Garland is the head of the U.S. Department of Justice and is sued in his official capacity.

9. Defendant U.S. Department of Justice (DOJ) is an agency of the United States.

10. Defendant Director Michael Carvajal is the head of the U.S. Bureau of Prisons and is sued in his official capacity.

11. Defendant United States Bureau of Prisons (BOP) is an agency of the United States.

## JURISDICTION AND VENUE

12. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the Administrative Procedure Act, 5 U.S.C. § 702, Section 12003(b)(2) of the Coronavirus Aid, Relief and Economic Security Act, P.L. 116-136, 134 Stat. 281 (2020), and 18 U.S.C. §§ 3621, 3624.

13. This Court has the authority to set aside agency action in this matter pursuant to 5 U.S.C. §§ 702, 706(2) and 28 U.S.C. § 2202.

14. Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391(e)(1) because Plaintiff resides in this district and Defendants are located within this district.

## STATEMENT OF FACTS

15. 18 U.S.C. § 3621 directs BOP to "designate the place of the prisoner's imprisonment," and states BOP "may designate any available penal or correctional facility" that meets programmatic needs, after considering: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; and (4) any statement by the court that imposed the sentence.

16. As the Third Circuit has held, this provision grants BOP "overall placement discretion" after it has considered the relevant factors. *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 246 (3d Cir. 2005).

17. This discretion further allows BOP to designate *initial* placement in a non-custodial setting, such as a Community Correctional Center. *Id.*; *accord Rodriguez v. Smith*, 541 F.3d 1180, 1189 (9th Cir. 2008); *Wedelstedt v. Wiley*, 477 F.3d 1160, 1161–62 (10th Cir. 2007); *Levine v. Apker*, 455 F.3d 71, 87 (2d Cir. 2006); *Fults v. Sanders*, 442 F.3d 1088, 1091 (8th Cir. 2006); *Goldings v. Winn*, 383 F.3d 17, 24 (1st Cir. 2004).

18. Furthermore, the Third Circuit in *Woodall* rejected the Government's argument that the BOP could "categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations." *Id.* at 244. Rather, the statute requires an "individualized process": in every case, the BOP may place the individual where it wishes *so long as* it has considered and applied the pertinent factors. *Id.* at 245, 247, 250.

19. 18 U.S.C. § 3624 governs BOP's "release of a prisoner."

20. In Section 3624(c), BOP is directed to consider "pre-release custody" in appropriate circumstances as people near the end of their prison terms.

21. "Pre-release custody" includes both placement in a "community correctional facility" or release to "home confinement," and Congress directed

BOP that it "shall" attempt to place prisoners on a fixed term in a community correctional facility at the end of their sentence, or "may" use "the authority under this subsection" to place prisoners on home confinement at the end of their sentence for up to 6 months. 18 U.S.C. §§ 3624(c)(1), (2).

22.	Congress insisted, however, that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4).

23.	As the Third Circuit held concerning an earlier, substantially identical, version of this statute, nothing in Section 3624 deprives BOP of discretion to make initial placement outside of a prison setting. It instead *requires* consideration of "pre-release custody" in *every* instance near the end of a sentence. *See Woodall*, 432 F.3d at 250 ("§ 3624 does not determine when the BOP should *consider* CCC placement, but when it must *provide* it."); *Rodriguez*, 541 F.3d at 1184-85 ("Contrary to [BOP's] argument that § 3624(c) limits placement in [residential re-entry centers (RRCs)] to the last ten percent of the sentence being served, the statute provides that '*of*' the last ten percent of the prisoner's sentence, the BOP shall, to the extent practicable, allow a prisoner to spend up to six months of that time in an institution such as an (RRC). Thus, although this statute imposes an affirmative duty on the BOP to consider placing an inmate in community confinement or a similar pre-release alternative toward the end of the inmate's

7

prison term, it does not interfere with the BOP's discretionary authority to consider such placement prior to the last ten percent of the prison term.") (citation omitted); *Wedelstedt*, 477 F.3d at 1166 ("Although § 3624(c) surely imposes an affirmative obligation on the BOP, whenever practicable, to place an inmate in a CCC or other form of community confinement as the inmate's release date nears, § 3624(c) has no bearing on whether a CCC may be considered as a place of imprisonment at some earlier point in a prisoner's period of incarceration.") (citations omitted); *Goldings*, 383 F.3d at 24 ("Thus, while § 3624(c) clearly limits the BOP's discretion *not* to consider community confinement or other pre-release alternatives at the end of a prisoner's prison term, it does not prohibit the BOP from doing so earlier pursuant to a different grant of discretionary authority.").

24. In 2018 Plaintiff, Dianthe Martinez-Brooks was criminally charged in the U.S. District Court for the District of New Jersey in case number 2:18-cr-00038.

25. Ms. Martinez-Brooks ultimately pled guilty to participating in a scheme to defraud a government entity of honest services, money, and property in violation of 18 U.S.C. §§ 2, 1343, 1346.

26. On September 18, 2018, the Honorable Jose L. Linares sentenced Ms. Martinez-Brooks to a 48-month prison term to be followed by 3 years of supervised release.

27. Ms. Martinez-Brooks surrendered to BOP custody on January 31, 2019 and began serving her sentence.

28. Thereafter, Ms. Martinez-Brooks served her prison term at Federal Correctional Institution Danbury.

29. In February and March 2020, the COVID-19 pandemic began ravaging the United States.

30. Federal prisons were hit particularly hard as detained persons and correctional staff simply could not accommodate physical distancing or other precautionary measures.

31. On March 26, 2020, recognizing the danger, Attorney General William Barr issued a memorandum to the Director of BOP ordering the agency to "utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in [its] custody." Attorney General William Barr, *Memorandum for Director of Bureau of Prisons* at 1 (Mar. 26, 2020) https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.

32. A.G. Barr set out five factors for BOP to consider when releasing people who were at risk of severe COVID-19 illness, including the security level of the prisoner, the severity of their offense of conviction, and their plan for re-entry. *Id*. at 2.

33. A.G. Barr prioritized those in custody who did not present a "danger … to the community," but were also at serious risk of severe illness or death. *Id*.

34. The very next day, March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, P.L. 116-136, 134 Stat. 281 (2020) (CARES Act).

35. Section 12003(b)(2) of the CARES Act provides: "During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."

36. The "covered emergency period" is defined as "the period beginning on the date on which the President declared a national emergency … with respect to [COVID-19] and ending on the date that is 30 days after the date on which the national emergency declaration terminates." CARES Act § 12003(a)(2).

37. The President declared the COVID-19 pandemic a national emergency on March 13, 2020, two weeks before the enactment of the CARES Act. *See Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, Proc. No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020).

38. On April 3, 2020, A.G. Barr found that COVID-19 emergency conditions were "materially affecting the functioning of the Bureau of Prisons." Attorney General William Barr, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* at 1 (Apr. 3, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf.

39. Ms. Martinez-Brooks was released from FCI Danbury on June 4, 2020 because she was not a danger to the community, had a stable release plan, and was at severe risk for serious illness or death from COVID-19.

40. Ms. Martinez-Brooks began serving a term of home confinement under the supervision of BOP's Residential Reentry Management New York field office.

41. To date, Ms. Martinez-Brooks has fully complied with the terms of her home confinement and is projected to be released from custody in June 2022 (when her sentence is adjusted for merit time credit).

42. As of the time of this filing, BOP notes that it has released more than 24,000 people to home confinement in response to A.G. Barr's directive. BOP, *Frequently Asked Questions Regarding Potential Inmate Home Confinement in Response to the COVID-19 Pandemic*, https://www.bop.gov/coronavirus/faq.jsp (last visited Apr. 30, 2021).

43. BOP recently sought guidance from DOJ's Office of Legal Counsel (OLC) regarding what would happen to the individuals who had been transferred to home confinement under § 12003(b)(2) of the CARES Act after the "covered emergency period" ends.

44. On January 15, 2021, OLC issued an opinion to BOP's General Counsel, holding that BOP has unlimited discretion to return individuals released under the CARES Act to prison from home confinement at any time, but also that once the CARES Act period "expires" BOP "must" return every person to prison if they have served more than 6 months of their term on home confinement. *See* Memorandum Opinion for General Counsel, Federal Bureau of Prisons, *Home Confinement of Federal Prisoners After the COVID-19 Emergency*, Jan. 15, 2021 (OLC Op.) at 4

https://www.justice.gov/sites/default/files/opinions/attachments/2021/01/17/2021-01-15-home-confine.pdf.

45. The OLC Opinion considered Section 3624(c)(2) to impose an absolute limit on BOP's discretion to use home confinement as "pre-release custody" to a term no greater than "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." *Id*. at 11.

46. The OLC Opinion also held that, notwithstanding contrary precedent from the Third Circuit and other federal courts of appeals, "BOP's authority under

18 U.S.C. § 3621(a) and (b) does not provide an alternative basis for authorizing continued home confinement for prisoners ineligible for continuing home confinement under section 3624(c)(2)." *Id*. at 1.

47. On April 15, 2021, Director Carvajal testified before the Senate Judiciary Committee at a hearing entitled *Oversight of the Federal Bureau of Prisons*.

48. During his testimony, Director Carvajal said that at the time of the hearing more than 4,000 people were serving their terms on home confinement, having been released under the CARES Act directives. The remaining 20,000 people had completed their sentences.

49. Director Carvajal also noted in his testimony that those released to home confinement were "transferred" by BOP because they were "still under [BOP] custody."

50. Ranking Member Senator Chuck Grassley confronted Director Carvajal about the OLC Opinion, describing CARES Act release to home confinement as a "vital tool," and noting that of the 24,000 people who had been released since the CARES Act's passage, only 151 have violated the terms of their release in any way, and only three have been arrested for new crimes.

51. Senator Grassley continued by saying he was "concerned" that the OLC Opinion on home confinement would "result in almost 4,000 inmates on

home confinement being forced to return to a facility to complete their sentences" which "seems to counter the First Step Act's goals" of "reduc[ing] recidivism while ensuring public safety all while making sure to not burden the taxpayers."

52.     Director Carvajal responded by saying it was BOP's position that the agency lacked the legal authority to release any person for more than six months on home confinement once the declared emergency ended.

53.     Director Carvajal also confirmed the statistic cited by Senator Grassley that only three persons had been rearrested while on home confinement.

54.     In response to Senator Grassley's concerns, Director Carvajal insisted that the agency had no desire to unnecessarily return people to prison, saying that "[i]f they have successfully been out there" the agency would try to place those persons in appropriate low-security prisons. But Director Carvajal opined that the agency had no power to continue terms of home confinement and "ask[ed]" that the "statute be changed."

55.     Ms. Martinez-Brooks has served more than 6 months of her sentence on home confinement. Because of BOP's current position, regardless of her programmatic needs, and despite her exemplary record following her release, BOP will order her to return to prison at the end of the declared COVID-19 emergency.

## COUNT ONE—UNLAWFUL AGENCY ACTION (5 U.S.C. § 706(2))
## PLAINTIFF V. DEFENDANTS

56. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

57. Section 12003(b)(2) of the CARES Act allows BOP to "lengthen" the "pre-release custody" period set out in 18 U.S.C. § 3624(c)(2) "during the covered emergency period."

58. The CARES Act does not set out any directive that BOP rescind such designations at any time. Instead, it discusses *only* initial pre-release custody determinations. Nothing in the Act suggests that people released to home confinement must or should be returned to prison when the "covered emergency period" has ended.

59. 18 U.S.C. § 3621 also vests broad and independent discretion with BOP to make initial designations to any form of custody, including supervision by a Community Correctional Center. *See Woodall*, 432 F.3d at 247.

60. 18 U.S.C. § 3624(c) does not deprive BOP of its discretion under Section 3621. Rather, it merely sets out affirmative obligations for those nearing the end of their sentence. *See id.* at 250 (discussing release to residential re-entry centers).

61. OLC's Opinion, and BOP's stated course of action, are contrary to the plain statutory text set out in Section 12003(b) of the CARES Act and 18 U.S.C. §§ 3621 and 3624.

62. Neither the CARES Act nor 18 U.S.C. § 3624 mandate that BOP return Ms. Martinez-Brooks to prison. Instead, 18 U.S.C. § 3621 requires that BOP make an individualized assessment of Ms. Martinez-Brooks' personal circumstances and determine whether or not it is appropriate for her to finish her sentence on home confinement.

63. An action is final under the Administrative Procedure Act ("APA") if "the agency has completed its decisionmaking process … [and] the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).

64. OLC's Opinion is the culmination of its decisionmaking process and is binding on BOP. *See* 28 U.S.C. § 512 ("The head of an executive department may require the opinion of the Attorney General on questions of law arising in the administration of his department."); *Smith v. Jackson*, 246 U.S. 388, 390 (1918) (agency head could not disregard Attorney General's opinion); *Pub. Citizen v. Burke*, 655 F. Supp. 318, 321-22 (D.D.C. 1987), *aff'd* 843 F.2d 1473 (D.C. Cir. 1988) ("[A]n Attorney General's opinion is binding as a matter of law on those

who request it until withdrawn by the Attorney General or overruled by the courts.").

65. OLC's Opinion will directly affect Ms. Martinez-Brooks because it binds BOP's placement discretion concerning her service of sentence.

66. OLC's Opinion is final agency action reviewable under the APA. *See New Hampshire Lottery Comm'n v. Barr*, 386 F. Supp. 3d 132, 146 (D.N.H. 2019) (OLC memo "constitutes final agency action without an adequate alternative to APA review"), *aff'd in part, vacated in part sub nom. New Hampshire Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021).

67. Defendants' determination that it entirely lacks discretion to allow Ms. Martinez-Brooks to serve the remainder of her sentence on home confinement is contrary to law and must be set aside by this Court. *See Woodall*, 432 F.3d at 251 (directing BOP to recognize its discretion in placement decisions).

## COUNT TWO—DECLARATORY JUDGMENT
## PLAINTIFF V. DEFENDANTS

68. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

69. DOJ and BOP's interpretations of Section 12003(b) of the CARES Act and 18 U.S.C. §§ 3621 and 3624 are contrary to the language of those statutes and are invalid.

17

70. DOJ and BOP have formalized their intent to return Ms. Martinez-Brooks to prison at the end of the declared COVID-19 emergency, ignoring their obligation to weigh the factors laid out in § 3621, and thereby make an individualized determination of her eligibility for home confinement. *See Woodall*, 432 F.3d at 244 (BOP cannot "categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations").

71. This Court has jurisdiction to issue definitive constructions of federal statutes under the Declaratory Judgment Act when DOJ has issued OLC Opinions that are binding on agencies and affect the rights of a plaintiff. *See New Hampshire Lottery Comm'n*, 986 F.3d at 62 (affirming declaratory judgment that OLC Opinion construing federal statute was erroneous).

72. This Court must issue a declaratory judgment concluding that Section 12003(b) of the CARES Act and 18 U.S.C. §§ 3621 and 3624 vest discretion with BOP to allow Ms. Martinez-Brooks to serve the remainder of her sentence on home confinement.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiff Dianthe Martinez-Brooks demands a declaratory judgment and order compelling Defendants to apply the discretionary factors set out in 18 U.S.C. § 3621 when considering whether to

allow Ms. Martinez-Brooks to serve the remainder of her sentence on home confinement, and an award of attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

May 17, 2021

Respectfully,

*/s/ Kara Rollins*
KARA ROLLINS (Attorney ID 107002014)
Litigation Counsel
CALEB KRUCKENBERG
Litigation Counsel
(*Pro Hac Vice* Application Pending)
JENIN YOUNES
Litigation Counsel
(*Pro Hac Vice* Application Pending)
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC, 20036
kara.rollins@ncla.legal
(202) 869-5210

*Attorneys for Plaintiff*