# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### NEWARK VICINAGE

NEW CIVIL LIBERTIES ALLIANCE
KARA ROLLINS (Attorney ID 107002014)
Litigation Counsel
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210

*Counsel to Plaintiff*

| | |
|---|---|
| DIANTHE MARTINEZ-BROOKS, | HON. BRIAN R. MARTINOTTI, U.S.D.J. |
| | HON. JESSICA S. ALLEN, U.S.M.J. |
| *Plaintiff,* | |
| | Civil Action No. |
| v. | 21-11307 (BRM)(JSA) |
| | |
| MERRICK GARLAND, | Motion Day: November 15, 2021 |
| Attorney General; *et al.,* | |
| | [ORAL ARGUMENT REQUESTED] |
| *Defendants.* | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION...................................................................................................... 1

BACKGROUND......................................................................................................... 3

STANDARD OF REVIEW........................................................................................ 9

ARGUMENT ............................................................................................................ 11

I.   THE OLC OPINION CONSTITUTES 'FINAL AGENCY ACTION' UNDER THE APA AND THIS ISSUE IS RIPE FOR ADJUDICATION .............................................. 11

   A.   The OLC Opinion Constitutes 'Final Agency Action' Under the APA ........ 11

      1.   *Bennett* Factor One: The OLC Opinion Marks the Consummation of BOP's Decisionmaking Process.................................................................. 14

      2.   *Bennett* Factor Two: The OLC Opinion Determines Martinez-Brooks's 'Rights or Obligations' and 'Legal Consequences' Flow from It ....................... 16

   B.   This Issue Is Ripe for Adjudication Because the OLC Opinion Is a 'Final Agency Action' and the Opinion Has Caused Immediate and Significant Harm to Plaintiff's Rights Under the Law.................................................................. 18

II.   MS. MARTINEZ-BROOKS'S CHALLENGE IS NOT BARRED BECAUSE SHE HAS ALLEGED THAT THE OLC OPINION IS 'CONTRARY TO ESTABLISHED FEDERAL LAW' 22

III.   THIS COURT SHOULD NOT DISMISS THIS CASE BECAUSE DEFENDANTS' FACTUAL ATTACK IS PREMATURE AND EVEN IF IT WERE NOT, THE CR/RIS MOTION DOES NOT PROVIDE THE SPECIFIC RELIEF PLAINTIFF SEEKS IN THIS CASE 23

   A.   The Ability of Ms. Martinez-Brooks to Petition for Reduction in Her Term of Imprisonment or Seek Compassionate Release Is Not an 'Adequate Remedy' Within the Meaning of the APA .............................................................. 24

   B.   The Court Should Exercise Its Discretion Under the DJA........................... 27

   C.   The Government's Strained Logic Regarding the Interplay Between This Action and Ms. Martinez-Brooks's Pending CR/RIS Motion Does Not Support Dismissal of This Action .............................................................................. 28

CONCLUSION ......................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)................................................................11, 19

*Bennett v. Spear*, 520 U.S. 154 (1997) ......................................................................13, 15

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ........................................................25, 26

*Citizens for Respons. & Ethics in Wash. v. U.S. Dep't of Justice,*
    846 F.3d 1235 (D.C. Cir. 2016)........................................................................... 25

*Citizens for Respons. & Ethics in Wash. v. U.S. Dep't of Justice,*
    922 F.3d 480 (D.C. Cir. 2019)........................................................................16, 17

*Const. Party of Pa. v. Aichele*, 757 F.3d 347 (3d Cir. 2014).............................. 10, 11, 22, 23

*Dababneh v. Warden Loretto FCI*, 792 F. App'x 149 (3d Cir. 2019) ................................. 22

*Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016) .......................................................10, 11

*Defy Ventures, Inc. v. U.S. Small Bus. Admin.*, 469 F. Supp. 3d 459 (D. Md. 2020)......... 22

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.,*
    396 F.3d 1265 (D.C. Cir. 2005).......................................................................25, 26

*Felmeister v. Office of Attorney Ethics, a Div. of the N.J. Admin. Office of the Courts,*
    856 F.2d 529 (3d Cir.1988).................................................................................. 19

*Garcia v. Vilsack*, 563 F.3d 519 (D.C. Cir. 2009) .............................................................. 26

*Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004) ................................................................. 15

*Gould Elec. Inc. v. U.S.*, 220 F.3d 169 (3d Cir. 2000) ...................................................... 10

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) ...................................... 9

*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977).....................10, 23

*Naik v. Renaud*, 947 F. Supp. 2d 464 (D.N.J. 2013) ........................................................ 19

*Nat'l Park Hospitality Assoc. v. Dep't of the Interior*, 538 U.S. 803 (2003) ....................11, 19

*Neal v. United States*, 516 U.S. 284 (1996) ...................................................................... 22

*New Hampshire Lottery Comm'n v. Barr*, 386 F. Supp. 3d 132 (D.N.H. 2019) ......13, 16, 21

*New Jersey Conservation Found. v. Fed. Energy Regul. Comm'n,*
    353 F. Supp. 3d 289 (D.N.J. 2018) ................................................................9, 10

*Peachlum v. City of York, Pennsylvania*, 333 F.3d 429 (3d Cir.2003).................................... 19

*Pub. Citizen v. Burke*, 655 F. Supp. 318 (D.D.C. 1987) ...................................................... 16

*Pub. Citizen v. Burke*, 843 F.2d 1473 (D.C. Cir. 1988) ...................................................... 17

*Reifer v. Westport Ins. Corp., Inc.*, 751 F.3d 129 (3d Cir. 2014) .......................................... 27

*Rodriguez v. Smith*, 541 F.3d 1180 (9th Cir. 2008) .......................................................... 12

*Turner v. Sec'y, Dep't of Hous. & Urb. Dev.*, 449 F.3d 536 (3d Cir. 2006) ..................26, 27

*Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57 (3d Cir. 2003) ......................... 11

**Statutes**

18 U.S.C. § 3621 ...............................................................................................3, 7, 19, 21

18 U.S.C. § 3621(b)........................................................................................................ 6

18 U.S.C. § 3624(b) ................................................................................ 20
18 U.S.C. § 3624(c) ................................................................................ 21
18 U.S.C. § 3624(c)(2) ....................................................................passim
18 U.S.C. § 3625 ..................................................................................... 22
18 U.SC. § 3624 ............................................................................... 6, 19
28 U.S.C. § 512 ....................................................................................... 16
5 U.S.C. § 704 .................................................................................. 13, 25
CARES Act § 12003 ............................................................................... 19
CARES Act § 12003(a)(2) .................................................................... 4, 5
Coronavirus Aid, Relief, and Economic Security Act, P.L. 116-136, 134 Stat. 281
    (2020) ................................................................................................ 1, 7

## Rules and Regulations

28 C.F.R. § 0.25(c) ................................................................................. 16
Fed. R. Civ. P. 12(b)(1) ....................................................................passim

## Other Authorities

Attorney General William Barr, *Increasing Use of Home Confinement at Institutions Most
    Affected by COVID-19* (Apr. 3, 2020) ........................................... 5, 6
Attorney General William Barr, *Memorandum for Director of Bureau of Prisons*
    (Mar. 26, 2020) ...................................................................................... 4
*Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19)
    Outbreak*, Proc. No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020) ................. 3
*Frequently Asked Questions Regarding Potential Inmate Home Confinement in Response to the
    COVID-19 Pandemic*, https://www.bop.gov/coronavirus/faq.jsp ............... 6
*Memorandum for the General Counsel Federal Bureau of Prisons*,
    45 O.L.C. Op. ____ (Jan. 15, 2021) ..........................................passim
Supp. Letter (docket no. 52), *United States v. Martinez-Brooks*,
    2:18-cr-00038-CCC (D.N.J. Aug. 4, 2021) ................................... 35
U.S. Dep't of Justice, Opinions https://www.justice.gov/olc/opinions-main ........... 22

## INTRODUCTION

Dianthe Martinez-Brooks is a 52-year-old nonviolent first-time offender. She has been serving her federal prison term on home confinement since June 2020 pursuant to the Coronavirus Aid, Relief, and Economic Security Act, P.L. 116-136, 134 Stat. 281 (2020) ("CARES Act"), which allowed the Bureau of Prisons ("BOP")[1] to "lengthen" the "pre-release custody" period set out in 18 U.S.C. § 3624(c)(2) during a statutorily defined emergency period. The purpose of this CARES Act provision was to protect medically vulnerable people such as Ms. Martinez-Brooks from the significant risk of illness or death posed by COVID-19 in congregate settings like prisons while also achieving Congress' goals of reducing recidivism while protecting public safety.

The CARES Act home confinement provision has been a resounding success. Of the approximately 24,000 non-violent and medically vulnerable people, like Plaintiff, released since the CARES Act's passage, only 151 individuals violated the terms of their release and three were arrested for new crimes.

Despite this, BOP has declared its unnecessary and cruel intention to order those people back to prison as the pandemic abates. On January 15, 2021, the U.S. Department of Justice's ("DOJ") Office of Legal Counsel ("OLC") issued an opinion to BOP's General Counsel determining that BOP has unlimited discretion to return individuals released under the CARES Act to prison from home confinement at any

---

[1] For purposes of this brief, Plaintiff refers to all Defendants collectively as "the Government."

1

time, *and* that once the CARES Act period "expires," BOP must return every person who has served more than 6 months on home confinement to prison.

It is that final determination made by and through the OLC Opinion that Ms. Martinez-Brooks challenges under the Administrative Procedure Act ("APA"). The Government claims there is no basis for APA review in its motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Despite the Government's protestations to the contrary, this Court has subject-matter jurisdiction to adjudicate this case under the APA. The OLC Opinion is "final agency action" because it is a definitive interpretation of the law that impacts Plaintiff's legal rights and imposes legal consequences on her. Second, this case is ripe because the OLC Opinion has caused immediate and significant harm to Plaintiff's rights under the law. Third, Plaintiff's challenge is not barred because she has alleged that the OLC Opinion is contrary to the law and nothing in the CARES Act precludes her from seeking review under the APA. Finally, the Government's argument that Ms. Martinez-Brooks has alternative avenues for relief should be rejected as premature, or in the alternative, rejected outright because the only adequate relief is a decision from this Court invalidating the OLC Opinion. That relief is only available by and through this action which triggers this Court's review of the OLC Opinion under the APA.

For the reasons set forth herein, the Government's motion to dismiss for lack of subject-matter jurisdiction should be denied.

## BACKGROUND

In 2018, Plaintiff Dianthe Martinez-Brooks was criminally charged in U.S. District Court for the District of New Jersey. Compl. ¶ 24. Subsequently, she pled guilty to participating in a scheme to defraud a government entity for honest services, money, and property in violation of 18 U.S.C. §§ 2, 1343, 1346. Compl. ¶ 25. On September 18, 2018, she was sentenced to a 48-month prison term to be followed by 3 years of supervised release and began serving her sentence on January 31, 2019. Compl. ¶¶ 26-27. As authorized by 18 U.S.C. § 3621, the Bureau placed her at the Federal Correctional Institution in Danbury, Connecticut. Compl. ¶ 28.

Soon thereafter, in February and March 2020, COVID-19 began spreading across the United States. Compl. ¶ 29. On March 13, 2020, the President declared the COVID-19 pandemic a national emergency. Compl. ¶ 37; *see Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, Proc. No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020). Federal prisons were hit particularly hard because detained persons and correctional staff simply could not accommodate physical distancing or other precautionary measures. Compl. ¶ 30.

Two weeks later, on March 26, 2020, Attorney General William Barr issued a memorandum to the Director of BOP ordering the agency to "utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in [its] custody." Attorney General William Barr, *Memorandum for Director of Bureau of Prisons* at 1 (Mar. 26, 2020), https://bit.ly/3niZIoA (last visited Oct. 25, 2021);

Compl. ¶ 31. The attorney General set out five factors for BOP to consider when releasing individuals who were at risk of severe COVID-19 illness, including security level of the prisoner, the severity of the offense of conviction, and their plan for re-entry. *Id.* at 2; Compl. ¶ 32. The Attorney General prioritized those in custody who did not present a "danger … to the community," and were also at risk for severe illness or death. *Id.*; Compl. ¶ 33.

The very next day, March 27, 2020, Congress passed the CARES Act. Compl. ¶ 34. Section 12003(b)(2) of the CARES Act provides:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

The first sentence of 18 U.S.C. § 3624(c)(2) states that "[t]he authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The CARES Act defined the "covered emergency period" as "the period beginning on the date on which the President declared a national emergency … with respect to [COVID-19] and ending on the date that is 30 days after the date on which the national emergency declaration terminates." § 12003(a)(2); Compl. ¶ 36.

Then on April 3, 2020, the Attorney General found that COVID-19 emergency conditions were "materially affecting the functioning of the Bureau of Prisons."

Attorney General William Barr, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* at 1 (Apr. 3, 2020), https://bit.ly/3noeb2N (last visited Oct. 25, 2021); Compl. ¶ 38. Under the CARES Act, the Attorney General was authorized to "expand the cohort of inmates who can be considered for home release upon [his] finding that emergency conditions are materially affecting the functioning of the [BOP]." *Id.* The CARES Act also permitted BOP to review "all at-risk inmates—not only those who were previously eligible for transfer." *Id.* at 2.[2]

Pursuant to the CARES Act, Ms. Martinez-Brooks was released from prison on June 4, 2020, and began serving a term of home confinement under the supervision of BOP's Residential Reentry Management New York field office. Compl. ¶¶ 39, 40. Under the Attorney General's directives, BOP released more than 33,300 people on home confinement. *Frequently Asked Questions Regarding Potential Inmate Home Confinement in Response to the COVID-19 Pandemic*, https://www.bop.gov/coronavirus/faq.jsp (last visited Oct. 22, 2021); Compl. ¶ 42 (citing same source as of Apr. 30, 2021).

On January 15, 2021, OLC issued an opinion to BOP's General Counsel.  In the memo, OLC took the position that BOP has unlimited discretion to return individuals released under the CARES Act to prison from home confinement at any time, but also

---

[2] There is a semantical difference in the way the Government and Plaintiff discuss Ms. Martinez-Brooks's conversion to home confinement. Throughout the Attorney General's Memoranda and the Defendants' briefing, the Government uses the term "transfer." *See also* Compl. ¶ 49, whereas Plaintiff uses the term "placement," as that is the language used by Congress in both CARES Act § 12003(a)(2) and 18 U.S.C. § 3624(c)(2).

that once the CARES Act emergency period "expires" BOP "must" return every person to prison if they have served more than 6 months of their term on home confinement. Compl. ¶ 44. Having served the past 16 months on home confinement, according to the OLC opinion Ms. Martinez-Brooks is subject to return to prison and not eligible for discretionary considerations available to her under 18 U.S.C. § 3621(b). Compl. ¶¶ 58-62, 65, 67.

Congress has directed BOP to "designate the place of the prisoner's imprisonment," and states that BOP "may designate any available penal or correctional facility" that meets programmatic needs, after considering: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; and (4) any statement by the court that imposed the sentence[.]" 18 U.S.C. § 3621(b); Compl. ¶ 15. This provision grants BOP placement discretion, including initial placement in a non-custodial setting, after it has conducted an individualized assessment according to these four factors. Compl. ¶¶ 16-18.

Likewise, § 3624 governs BOP's "release of a prisoner" and directs BOP to consider "pre-release custody," including placement in a "community correctional facility" or release to "home confinement," as people near the end of their prison terms. 18 U.S.C. § 3624; Compl. ¶¶ 20-21. Section 3624 does not limit or restrict BOP's authority under section 3621. 18 U.S.C. § 3624; Compl. ¶ 22. Rather, this provision places an affirmative duty on BOP to consider "pre-release custody" in every instance near the end of a prisoner's sentence, but it does not preclude BOP from considering such placement

earlier in a prisoner's term by a different grant of discretionary authority, such as the CARES Act or 18 U.S.C. § 3621. *Id.*; *see also* Compl. ¶ 35.

Plaintiff argues that the OLC Opinion directly contradicts section 3624 by finding that BOP "would be required to recall the prisoners to correctional facilities unless they are otherwise eligible for home confinement under 18 U.S.C. § 3624(c)(2)." *See Memorandum for the General Counsel Federal Bureau of Prisons*, 45 O.L.C. Op. ___, 2 (Jan. 15, 2021). The OLC Opinion also determined that Section 3624(c)(2) imposes an absolute limit on BOP's discretion to use home confinement as "pre-release custody" to a term no greater than "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." *Id.* at 11; Compl. ¶ 45. The OLC Opinion also determined that, contrary to existing precedent, "BOP's authority under 18 U.S.C. § 3621(a) and (b) does not provide an alternative basis for authorizing continued home confinement for prisoners ineligible for continuing home confinement under section 3624(c)(2)." 45 O.L.C. Op. at 2; Compl. ¶ 45.  This determination is directly at odds with 18 U.S.C. §§ 3621 and 3624, which require judges to assess prisoners' specific circumstances in determining whether or not they should be returned to prison or permitted to finish their sentences on home confinement.

On April 15, 2021, Director Carvajal testified before the Senate Judiciary Committee at a hearing entitled, "Oversight of the Federal Bureau of Prisons." Compl. ¶ 47. Director Carvajal noted that more than 4,000 people were still serving their terms on home confinement, having been released under CARES Act directives, and some

20,000 had completed their sentences while on home confinement. Compl. ¶ 42. During his testimony, Ranking Member Senator Chuck Grassley confronted Director Carvajal about the OLC Opinion because release to home confinement was a "vital tool," and noted that of the 24,000 people who had been released since the CARES Act's passage, only 151 had violated the terms of their release in any way, and only three have been arrested for new crimes. Compl. ¶ 50. Senator Grassley expressed concern about the OLC Opinion because it would "result in almost 4,000 inmates on home confinement being forced to return to a facility to complete their sentences" which "seems to counter the First Step Act's goals" of "reduc[ing] recidivism while ensuring public safety all while making sure to not burden the taxpayers." Compl. ¶ 51. Director Carvajal responded by saying it was BOP's position that the agency lacked the legal authority to release any person for more than six months on home confinement once the declared emergency ended. Compl. ¶ 52. Director Carvajal insisted that BOP had no desire to unnecessarily return people to prison, saying that "[i]f they have successfully been out there" the agency would try to place those persons in appropriate low-security prisons. Compl. ¶ 54. But Director Carvajal insisted that the agency had no power to continue terms of home confinement and "ask[ed]" that the "statute be changed." *Id.*

In the 16 months since Ms. Martinez-Brooks was placed in home confinement, she has fully complied with the terms of her release. Compl. ¶ 41. Assuming she is credited with all available good time, Ms. Martinez-Brooks is projected to be released

in June 2022. *Id.* However, because Ms. Martinez-Brooks has served more than 6 months of her sentence on home confinement, BOP's determination by and through the OLC Opinion requires BOP to order her return to prison when the CARES Act conditions cease. Compl. ¶ 55; *see* 45 O.L.C. Op. at 4 ("[O]nce [the CARES Act] authority expires, we believe that BOP must respect the time limits under Section 3624(c)(2) for all federal prisoners, including those who had been transferred to home confinement prior to the final months of their term under the special CARES Act placement authority."). Under BOP's erroneous interpretation, Ms. Martinez-Brooks's return to prison is automatic and certain, regardless of her programmatic needs, and despite her exemplary record following her release. Compl. ¶ 55.

## STANDARD OF REVIEW

Defendants challenge Ms. Martinez-Brooks's Complaint pursuant to Fed. R. Civ. P. 12(b)(1). That rule "mandates the dismissal of a case for 'lack of subject-matter jurisdiction.'" *New Jersey Conservation Found. v. Fed. Energy Regul. Comm'n*, 353 F. Supp. 3d 289, 295 (D.N.J. 2018) (citation omitted). Under such a challenge, "the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists." *Id.* (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A motion made pursuant to Fed. R. Civ. P. 12(b)(1) may either "attack[] the complaint as deficient on its face" or "attack[] the existence of subject matter

jurisdiction in fact, apart from any pleadings." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

The latter, known as a facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (internal citation omitted). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

In contrast, a factual attack "disputes the existence of certain jurisdictional facts alleged by the plaintiff." *New Jersey Conservation Found.*, 353 F. Supp. 3d at 295. When a factual attack is made, as Defendants attempt here, a court "may weigh and 'consider evidence outside the pleadings.'" *Const. Party of Pa.*, 757 F.3d at 358 (quoting *Gould Elec. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)). However, a factual attack may only occur *after* "the answer has been served." *Mortensen*, 549 F.2d at 891-92. This is because "[a] factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted." *Id.* at n.17. When a factual attack is filed by a party before that party files an answer, its attack is, "by definition, a facial attack." *see also Const. Party of Pa.*, 757 F.3d at 358.

Defendants have not filed an answer in this case, so their alleged factual attack under Fed. R. Civ. P. 12(b)(1) should be construed as a facial attack. Thus, this court

should "consider the allegations of the complaint as true[,]" *Davis*, 824 F.3d at 346, and

"constru[e] the alleged facts in favor of [Ms. Martinez-Brooks][.]" *Const. Party of Pa.*, 757

F.3d at 358.

## ARGUMENT

This Court has jurisdiction to adjudicate this matter. Accordingly, the Court

should deny Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1).

## I.   THE OLC OPINION CONSTITUTES 'FINAL AGENCY ACTION' UNDER THE APA AND THIS ISSUE IS RIPE FOR ADJUDICATION

In the context of the APA, "[r]ipeness and finality … are closely related." *Univ. of*

*Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 68 (3d Cir. 2003). This is because

"[f]inality is an element in the test for ripeness." *Id.* (citing *Nat'l Park Hospitality Assoc.*

*v. Dep't of the Interior*, 538 U.S. 803, 812 (2003) and *Abbott Labs. v. Gardner*, 387 U.S. 136,

149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

### A. The OLC Opinion Constitutes 'Final Agency Action' Under the APA

Contrary to the Government's claims, Plaintiff does not presuppose that the OLC

Opinion is "final agency action" which determines her future placement by BOP. *See*

Defs. Br. at 20.  Rather, the face of the OLC Opinion, and statements made by Director

Carvajal to the United States Senate make that clear. As the OLC Opinion states: "[W]e

think that once the CARES Act authority evaporates, the maximum term of home

confinement must govern." 45 O.L.C. Op. at 5. The Government understands section

3624(c)(2) to permit a maximum term of home confinement as "the shorter of 10

percent of the term of imprisonment of that prisoner or 6 months." *Id.* (quoting 18 U.S.C. § 3624(c)(2)).[3] The OLC Opinion also states that "[o]nce the CARES Act authority expires, BOP's obligation to respect section 3624(c)(2)'s time limit applies to all prisoners remaining in BOP custody, including those who had been placed early in home confinement in response to the COVID-19 emergency." 45 O.L.C. Op. at 5. The OLC Opinion also concludes that "the general imprisonment authorities of 18 U.S.C. § 3621(a) and (b) do not supplement the CARES Act authority to authorize home confinement under the Act beyond the limits of section 3624(c)(2)." *Id.* at 2.

In his remarks to the Senate Judiciary Committee, Director Carvajal reiterated BOP's determination that the agency lacked the legal authority to release any person for more than six months on home confinement once the declared emergency ended and that BOP had no power to continue the terms of home confinement that were permitted under the CARES Act. *See* Compl. ¶¶ 52, 54. Ms. Martinez-Brooks has served 16 months on home confinement and has more than 4.8 months remaining on her term

---

[3] As the Complaint explains, the Government's understanding of the temporal language in section 3624(c)(2) and its interplay with section 3621(b) is erroneous. *See Rodriguez v. Smith*, 541 F.3d 1180, 1183 (9th Cir. 2008) ("The Second, Third, Eighth and Tenth Circuits have each concluded that Congress's intent regarding inmate placement and transfer is clear from the plain language of 18 U.S.C. § 3621(b), and the BOP regulations establishing a categorical temporal limitation on eligibility for [residential re-entry centers (RRC)] placement contravene the plain meaning of the statute."); *see also id.* at 1184-85 ("Thus, although [18 U.S.C. § 3624] imposes an affirmative duty on the BOP to consider placing an inmate in community confinement or a similar pre-release alternative toward the end of the inmate's prison term, it does not interfere with the BOP's discretionary authority to consider such placement prior to the last ten percent of the prison term.").

of imprisonment.[4] Thus, per the OLC Opinion and as affirmed by Director Carvajal, she has already served the maximum term of home confinement and the Government is without authority to continue the terms of her home confinement at the end of the covered emergency period.

The APA enables judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Under the APA an agency action is "final" when two conditions are met: (1) "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature[;]" and, (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citation omitted).

An OLC opinion is a "definitive statement concerning the Justice Department's interpretation of" a particular statute which need not be implemented to be challenged. *New Hampshire Lottery Comm'n v. Barr*, 386 F. Supp. 3d 132, 146 (D.N.H. 2019), *aff'd in part, vacated in part sub nom. New Hampshire Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021) (permitting pre-enforcement review challenge of OLC Opinion and finding that the OLC memorandum "constitutes final agency action without an adequate alternative to APA review").

The OLC Opinion constitutes final agency action under the *Bennett* factors.

---

[4] Ms. Martinez-Brooks was sentenced to 48 months, *see* Compl. ¶ 26, so under section 3624(c)(2) the "10 percent of the term of imprisonment" language controls.

1. ***Bennett* Factor One: The OLC Opinion Marks the Consummation of BOP's Decisionmaking Process**

The Government asserts that the OLC Opinion is not final agency action because BOP has not determined "whether, when, and how to address Plaintiff's placement following the end of the pandemic state of emergency" and because the OLC Opinion only "contains internal legal advice addressing only certain aspects of those questions." Defs. Br. at 21 (Doc. 9-2). The Government is wrong on both accounts.

As discussed above, the OLC Opinion and Director Carvajal's testimony conclude that the Government *must* return prisoners, like Ms. Martinez-Brooks, who have, by the Government's calculation, already served the maximum term of home confinement to prison. "Whether" would suggest that the Government has some choice in how it addresses Plaintiff's placement following the end of the pandemic state of emergency. But the OLC Opinion and Director Carvajal's testimony confirm that the Government has decided it has no choice but to order Plaintiff back to prison. That the Government will have to take future steps to implement the policy decisions set forth in the OLC Opinion does not mean the Government has not consummated its decisionmaking process.

The Government makes much of the fact that it has not yet decided "when and how" it will address Ms. Martinez-Brooks's placement. However, an agency's decision need not have an implementation plan to be final and subject to review under the APA. The decision need only "mark the 'consummation' of the agency's decisionmaking

process." *Bennett*, 520 U.S. at 178 (citation omitted). Were the rule otherwise, courts could not review agency rulemakings or other determinations until they are fully implemented. But courts routinely review rules and decisions prior to their final implementation. Indeed, the APA permits such review *before* an agency fully implements a process for enforcing or supporting its final decision.

Contrary to the Government's argument, *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004), does not counsel otherwise. The Government leans heavily on the fact that in *Winn* a memorandum directed BOP officers to implement revised procedures pursuant to an OLC Memorandum.  That case, though, did not turn on actual implementation of the memorandum's policy determination and change. As the First Circuit noted, it was the statutory interpretation in that OLC Memorandum that Mr. Goldings challenged and that the court reviewed and found to be in error. *See id.* at 21 ("At issue in this case is the validity of the defendants' interpretation of 18 U.S.C. § 3621(b) and § 3624(c), the statutory provisions that govern the BOP's authority to decide where a federal offender must serve all or part of his or her sentence."). In fact, the crux of the issue in *Goldings* was similar to the allegations in Plaintiff's Complaint that, in an OLC Opinion, the Government has adopted a policy that conflicts with federal law. *See* Compl. ¶ 67.

2.   *Bennett* **Factor Two: The OLC Opinion Determines Martinez-Brooks's 'Rights or Obligations' and 'Legal Consequences' Flow from It**

Defendants' argument under *Bennett*'s second factor distills down to their erroneous view that the OLC Opinion is merely "predecisional and deliberative," "internal," "legal advice" that has no "binding legal force upon any inmate supervised by BOP." Defs. Br. at 23. But this is a misstatement of both the law and the binding effect that OLC opinions have on agency personnel which directly impact individuals' rights under the law.

OLC has been delegated authority to "[r]ender[] opinions to the Attorney General and to the heads of the various organizational units of the Department on questions of law arising in the administration of the Department." 28 C.F.R. § 0.25(c); *see also* 28 U.S.C. § 512.  OLC's opinions are binding on those agencies or organizational units who request them. *See Pub. Citizen v. Burke*, 655 F. Supp. 318, 321-22 (D.D.C. 1987), *aff'd* 843 F.2d 1473 (D.C. Cir. 1988). ("[A]n Attorney General's opinion is binding as a matter of law on those who request it until withdrawn by the Attorney General or overruled by the courts."). An OLC opinion is a "definitive statement concerning the Justice Department's interpretation of" a particular statute which need not be implemented to be challenged. *New Hampshire Lottery Comm'n v. Barr*, 386 F. Supp. 3d at 146.

Defendants' reliance on *Citizens for Respons. & Ethics in Wash. v. U.S. Dep't of Justice*, 922 F.3d 480 (D.C. Cir. 2019), to support their view that OLC Opinions do not, on

their own, have an operative effect on private parties is misplaced. *See* Defs. Br. at 23. If anything, that case supports Plaintiff's allegations about the nature of the challenged OLC Opinion, because "[a]n OLC opinion … qualifies as the 'working law' of an agency only if the agency has 'adopted' the opinion as its own." *Citizens for Respons. & Ethics in Wash.*, 922 F.3d at 486 (citation omitted). Likewise, Defendants' reliance on *Goldings* and *Burke* is misplaced. As discussed above, *Goldings* presented a challenge to the statutory interpretation provided by an OLC memorandum. The court's determination that that interpretation was erroneous did not turn on the existence of a directive from BOP—formal or otherwise. Defendants' strained reading of *Burke* fares no better. The court in *Burke* did not rule based on whether the Archivist "expressly 'adopted' OLC's reasoning and 'acquiesced' to its conclusions" as the Government suggests, *see* Defs. Br. at 23, but rather, as it did in *Goldings*, the court engaged in a searching analysis of the statute and regulations the OLC opinion interpreted. *Burke*, 843 F.2d at 1475-80. The *Burke* court's holding makes this clear: "We hold, as did the district court, that the Archivist's regulations, *as interpreted by the OLC memorandum*, rely on an erroneous construction of the Constitution and therefore cannot be sustained." *Id.* (emphasis added).

While adoption is not dispositive, there can be little doubt BOP has "adopted" the OLC Opinion. As discussed above, Director Carvajal testified before the Senate Judiciary Committee about BOP's home confinement practices pursuant to the CARES Act. When he was asked about the OLC Opinion he responded that, as the OLC

Opinion concludes, BOP is without power to continue the terms of home confinement and instead requested that the "statute be changed." Compl. ¶ 54. It is precisely that determination—that the Government is without power to continue the terms of home confinement—that Ms. Martinez-Brooks challenges.

The OLC Opinion is the consummation of the Government's decisionmaking process and is neither "predecisional" nor "deliberative." Nor is the OLC Opinion "internal," as it is one that the Department of Justice has deemed appropriate for publication and made available online. *See* U.S. Dep't of Justice, Opinions, https://www.justice.gov/olc/opinions-main (last visited October 24, 2021). The General Counsel for BOP requested the challenged OLC Opinion, and BOP is thus bound by its determinations. Unless a court overturns the OLC Opinion, BOP must immediately and without discretion return Ms. Martinez-Brooks to prison at the end of the covered emergency period, subjecting her to the legal consequence of a return to prison without the benefit of BOP exercising its discretion under the law to consider permitting her to remain in home confinement. Therefore, the OLC Opinion is "final agency action" and is subject to judicial review.

## B. This Issue Is Ripe for Adjudication Because the OLC Opinion Is a 'Final Agency Action' and the Opinion Has Caused Immediate and Significant Harm to Plaintiff's Rights Under the Law

Ripeness is a justiciability doctrine aimed at preventing courts "from entangling themselves in abstract disagreements over administrative policies" which "protect[s] the agencies from judicial interference until an administrative decision has been formalized

and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n*, 538 U.S. at 807-08 (quoting *Abbott Labs.*, 387 U.S. at 148-49). When considering whether an administrative action is ripe for judicial review, a court must consider "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Peachlum v. City of York, Pennsylvania*, 333 F.3d 429, 434 (3d Cir.2003) (internal quotation omitted) (citing *Abbott Labs.*, 387 U.S. at 149).

In an administrative action the "fitness" determination is made based "upon factors such as whether the agency action is final; whether the issue presented for decision is one of law which requires no additional factual development; and whether further administrative action is needed to clarify the agency's position[.]" *Naik v. Renaud*, 947 F. Supp. 2d 464, 472 (D.N.J. 2013), *aff'd sub nom. Naik v. Dir. U.S. Citizenship & Immigr. Servs. Vermont*, 575 F. App'x 88 (3d Cir. 2014) (quoting *Felmeister v. Office of Attorney Ethics, a Div. of the N.J. Admin. Office of the Courts*, 856 F.2d 529, 535-36 (3d Cir.1988)). The "hardship" factor turns on whether "the hardship [is found] to be 'both immediate and significant' to 'overcome prudential interest in deferral.'" *Id.* (quoting *Felmeister*, 856 F.2d at 537).

The OLC Opinion is ripe for adjudication. It is "fit" for review because, as demonstrated above, the Opinion is "final agency action." The issue presented is purely legal as Plaintiff requests that the Court review the OLC Opinion and set it aside as contrary to law. The inquiry requires only that this Court engage in a statutory analysis of 18 U.S.C. §§ 3621, 3624 and CARES Act § 12003, and determine whether the OLC

19

Opinion presents an irreconcilable conflict with these statutes.  This matter is well within this Court's purview. No further record development is necessary to make such a determination.

Home confinement under the CARES Act is a "vital tool" to protect non-violent and medically vulnerable people like Ms. Martinez-Brooks that promotes the "First Step Act's goals of 'reduc[ing] recidivism while ensuring public safety all while making sure to not burden the taxpayers." Compl. ¶ 51. But the OLC Opinion requiring Ms. Martinez Brooks's non-discretionary return to prison substantially impairs her ability to integrate back into society. She cannot make long-term plans or substantial commitments with the threat of a return to prison at virtually any time hanging over her head. Thus, the Opinion creates a substantial and immediate hardship.  In short, since the OLC Opinion was issued 10 months ago, Ms. Martinez-Brooks has effectively lived in limbo because the threat of her immediate non-discretionary return to prison remains ever present.

The Government obfuscates the import of the OLC Opinion by suggesting there are too many contingencies to find it ripe for review because it is unclear if or when the covered emergency period will end.[5] *See* Defs. Br. at 12-17. However, this position

---

[5] The Government's ripeness argument relies heavily on the *assumption* that Ms. Martinez-Brooks will receive all good time credit available to her such that her term of imprisonment *may* conclude in June 2022. *See* Defs. Br. at 13, 15-17. However, the calculation of good time credit is also a discretionary act by BOP. *See* 18 U.S.C. § 3624(b) ("[A] prisoner … may receive credit toward the service of the prisoner's sentence … subject to determination by the [BOP]… .") (emphasis added)). While there is no reason

ignores the binding nature of the OLC Opinion on BOP, and the fact that the OLC Opinion determined that BOP's discretion to place prisoners on home confinement pursuant to the CARES Act ceases when the CARES Act authority expires, despite circuit precedent to the contrary regarding BOP's discretionary authority.[6] *See* Compl. ¶ 16-22 (citing cases analyzing the interplay between the discretionary placement decisions permitted under 18 U.S.C. § 3621 and the temporal aspects of 18 U.S.C. § 3624(c)); *see also New Hampshire Lottery Comm'n*, 386 F. Supp. 3d at 146 (finding that an OLC opinion was a "definitive statement concerning the Justice Department's interpretation of" a particular statute which need not be implemented to be challenged under the APA).

The OLC Opinion is ripe for review, and this Court should deny Defendants' motion to dismiss.

---

to believe that Ms. Martinez-Brooks will not be eligible for release in June 2022, that is not a foregone conclusion because the Government has not made that determination yet. This fact cuts against the Government's analysis. For purposes of this Court's review, any temporal considerations should be reviewed based on the 48-month term to which she was sentenced and that terminates in January 2023.

[6] The Government also misreads the OLC Opinion because it suggests that if the federal emergency status extends long enough Plaintiff may be eligible for home confinement under section 3624(c)(2). *See* Defs. Br. at 16. But that reading ignores the clear language of the OLC Opinion itself, establishing that it is BOP's view that the maximum home confinement term "must govern" and there is no discretion to lengthen that time. 45 O.L.C. Op. at 5. As such, individuals like Plaintiff who have already served the maximum home confinement term must be returned to prison.

## II.   MS. MARTINEZ-BROOKS'S CHALLENGE IS NOT BARRED BECAUSE SHE HAS ALLEGED THAT THE OLC OPINION IS 'CONTRARY TO ESTABLISHED FEDERAL LAW'

While 18 U.S.C. § 3625 erects a bar against APA review of placement determinations, decisions, or orders, it does not prevent review of the OLC Opinion for two reasons. First, "even where judicial review under the APA is specifically excluded by statute, judicial review remains available for allegations that BOP action violates the Constitution… or is contrary to established federal law." *Dababneh v. Warden Loretto FCI*, 792 F. App'x 149, 151 (3d Cir. 2019) (citing *Neal v. United States*, 516 U.S. 284, 295 (1996)). Ms. Martinez-Brooks has alleged that the OLC Opinion is contrary to established federal law, including Third Circuit precedents, and as such review under the APA is not barred. *See* Compl. ¶¶ 16-22, 67. And this Court must construe allegations, including her claims that the OLC Opinion conflicts with existing law, as true at this juncture. *See Const. Party of Pa.*, 757 F.3d at 358.

Second, nothing in the CARES Act suggests that Congress intended to bar review of agency determinations subject to the Act's provisions. Indeed, since its passage, there have been many challenges to agency determinations made pursuant to the authority granted by the CARES Act that courts found reviewable. *See, e.g., Defy Ventures, Inc. v. U.S. Small Bus. Admin.*, 469 F. Supp. 3d 459 (D. Md. 2020) (challenge under the APA alleging that SBA's criminal history rule contravened the CARES Act).

Because Plaintiff is not prohibited from challenging the OLC Opinion under 18 U.S.C. § 3625 or the CARES Act, and this Court has jurisdiction to review her claims

under the APA's review provisions, she is also permitted to request that this Court issue a declaratory judgment under the Declaratory Judgment Act ("DJA"). Accordingly, this Court should deny the Defendants' motion to dismiss.

## III. THIS COURT SHOULD NOT DISMISS THIS CASE BECAUSE DEFENDANTS' FACTUAL ATTACK IS PREMATURE AND EVEN IF IT WERE NOT, the CR/RIS MOTION DOES NOT PROVIDE THE SPECIFIC RELIEF PLAINTIFF SEEKS IN THIS CASE

Defendants' factual attack under Fed. R. Civ. 12(b)(1) cannot survive. Defendants assert a factual attack against Plaintiff's Complaint "on grounds of the availability of alternative remedies." Defs. Br. at 10. However, a factual attack may only occur *after* "the answer has been served." *Mortensen*, 549 F.2d at 891-92. Defendants have not filed an answer in this matter. Thus, their factual attack under Fed. R. Civ. 12(b)(1) is premature.

However, if this Court determines that it can review Defendants' factual attack—it should not—or this Court determines that it can convert Defendants' factual attack regarding the availability of alternative remedies into a facial attack, Plaintiff maintains that those attacks still fail.[7]

---

[7] Plaintiff relies on facts outside of the Complaint insofar as they are necessary for her to adequately respond to Defendants' arguments. *See Const. Party of Pa.*, 757 F.3d at 358.

As with other arguments proffered by the Government, they misunderstand and misconstrue what the Complaint pleads, and the remedies Ms. Martinez-Brooks seeks. As stated in the Complaint, she seeks[8]:

(1) a determination by this Court that the Government's decision, made by and through the OLC Opinion, "that it lacks discretion to allow [her] to serve the remainder of her sentence on home confinement is contrary to law and must be set aside by this Court[,]" *see* Compl. ¶ 67;

(2) a declaratory judgment "concluding that Section 12003(b) of the CARES Act and 18 U.S.C. §§ 3621 and 3624 vest discretion with BOP to allow [her] to serve the remainder of her sentence on home confinement[,]" *see* Compl.  ¶ 72 and Prayer for Relief; and,

(3) an order compelling the Government "to apply the discretionary factors set out in 18 U.S.C. § 3621 when considering whether to allow Ms. Martinez-Brooks to serve the remainder of her sentence on home confinement[,]" *see* Prayer for Relief.

## A. The Ability of Ms. Martinez-Brooks to Petition for Reduction in Her Term of Imprisonment or Seek Compassionate Release Is Not an 'Adequate Remedy' Within the Meaning of the APA

The Government's misrepresentation of Ms. Martinez-Brooks's requested relief is telling. The Government effectively asks this Court to ignore the relief she *actually* seeks

---

[8] Ms. Martinez-Brooks also seeks "an award of attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate" but those remedies are not relevant to the current inquiry.

in her Complaint because it believes "at bottom" that relief would amount to "an order allowing her to remain home and not be returned to prison." *See* Defs.' Br. at 26. But Ms. Martinez-Brooks does not ask for such an order, nor is such an outcome guaranteed even if she prevails in this matter. Rather, she is simply asking this Court to set aside the OLC Opinion and require BOP to make an individualized determination in her case based on section 3621's discretionary factors, as the law requires.

The APA permits review of final agency actions "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Courts must "avoid lightly 'constru[ing] [section 704] to defeat the [APA's] central purpose of providing a broad spectrum of judicial review of agency action.'" *See Citizens for Respons. & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1244 (D.C. Cir. 2016) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (citation omitted)).

In determining whether a remedy is "adequate" such that it precludes APA review, a court "look[s] for 'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *Id.* (citations omitted). There is no categorical way to identify legislative intent. However, courts have identified circumstances in which Congress intends to create an alternative remedy, including "where Congress has provided 'an independent cause of action or an alternative review procedure' in a purported alternative." *See id.* (quoting *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)). To have preclusive effect, the "adequate" alternative "need not provide relief

identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz Neighborhood Health Ctr.*, 396 F.3d at 1272).

Congress has not provided an adequate alternative for Ms. Martinez-Brooks to challenge the erroneous OLC Opinion. The CARES Act and Subchapter C of Chapter 229 of Title 18 are silent regarding how a prisoner who has been placed on home confinement pursuant to the CARES Act may challenge the Government's determination that it lacks any discretion to allow her to serve the remainder of her sentence on home confinement. Thus, there is no indication that Congress intended to create an alternative remedy that would preclude review under the APA. Nor can Plaintiff's CR/RIS Motion be construed as an alternative remedy because the relief requested in that motion—compassionate release or reduction of her sentence to time served—is not of the same genre as that sought here, *i.e.*, a determination by this Court that the OLC Opinion conflicts with existing law and must be set aside. *See* Compl. ¶ 67; *cf. Bowen*, 487 U.S. at 904 (rejecting the ability to bring a claim for "monetary relief … in the Claims Court under the Tucker Act" as an inadequate and non-preclusive alternative to APA review).

The Government's passing reliance on *Turner v. Sec'y, Dep't of Hous. & Urb. Dev.*, 449 F.3d 536 (3d Cir. 2006), is of no moment. In *Turner*, the Third Circuit determined that a statute authorizing "private suits directly against perpetrators of allegedly discriminatory practices" was an adequate and preclusive alternative to APA review. *Id.*

at 540. As the court noted, the plaintiff pursued that exact type of action permitted under that statute but was unsuccessful. *Id.* Unlike the plaintiff in *Turner*, Ms. Martinez-Brooks has no adequate alternative remedy at her disposal to challenge the OLC Opinion, nor does her CR/RIS motion provide such remedy.

## B. The Court Should Exercise Its Discretion Under the DJA

Plaintiff agrees that the DJA affords courts discretion with respect to whether and when they may declare a party's rights under the statute. *See* Defs. Br. at 26. However, Plaintiff maintains that this case is one where this Court's discretion should be exercised. As the court recognized in *Reifer v. Westport Ins. Corp., Inc.*, 751 F.3d 129 (3d Cir. 2014), "the absence of pending parallel state proceedings militates significantly in favor of exercising [DJA] jurisdiction, although it alone does not require such an exercise." *Id.* at 144. When, as here, there are no pending parallel state proceedings then, "as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Id.* While *Reifer* recognized some eight factors to be considered, that list is non-exhaustive and left open the possibility that certain situations may require a court to "consult and address other relevant case law or considerations." *Id.* at 146.

The Government identifies four factors which it argues weigh in favor of this Court's declining to review Ms. Martinez-Brooks's claim under the DJA: (1) "the availability and relative convenience of other remedies"; (2) "avoidance of duplicative

litigation"; (3) "the ripeness issue"; and, (4) "the reality that Plaintiff seeks a judicial ruling on what is a larger public policy debate." *See* Def. Br. at 26, n.11. But applying these factors does not militate in favor of denying review here. Nor, as *Reifer* counsels, do they outweigh the lack of pending parallel state proceedings at issue in this case. Indeed, the Government does not even discuss that factor in its analysis.

The first factor, regarding the availability and relative convenience of other remedies, is inapplicable for the reasons discussed above. The remedy Plaintiff seeks here and the one available to her through her CR/RIS motion are not identical, nor do they achieve the same ends. Likewise, this challenge is not duplicative of Plaintiff's CR/RIS motion, which does not seek to invalidate the OLC Opinion. Third, as discussed above, *see supra* Section I.B., this case is ripe for review. Finally, the fact that Ms. Martinez-Brooks is challenging a determination by the Government that implicates a "larger public policy debate" cannot be a ground to decline DJA jurisdiction. If it were, the DJA would be inapplicable to any challenge to any government action because such a challenge necessarily implicates a "public policy debate."

## C. The Government's Strained Logic Regarding the Interplay Between This Action and Ms. Martinez-Brooks's Pending CR/RIS Motion Does Not Support Dismissal of This Action

The Government's argument that Plaintiff's CR/RIS motion provides a remedy sufficient to preclude her claims under the APA and DJA amounts to little more than "heads we win, tails you lose." Indeed, the Government suggests that there is something improper about the timing of Ms. Martinez-Brooks's briefing related to her CR/RIS

motion and the filing of this case. *See* Defs. Br. at 27. But the Government ignores the fact that it has taken the position that Ms. Martinez-Brooks's "status on home confinement … negate[s] the extraordinary and compelling reason she has advanced for compassionate release." *See* Supp. Letter (docket no. 52), *United States v. Martinez-Brooks*, 2:18-cr-00038-CCC (D.N.J. Aug. 4, 2021).[9]

Thus, it is the Government's view that so long as she is on home confinement under the CARES Act, Ms. Martinez-Brooks is disqualified from seeking compassionate release. *And*, so long as she can seek compassionate relief, she is precluded from seeking review from this Court to invalidate the OLC Opinion defining the terms of her home confinement under the CARES Act. Such strained logic cannot be supported.

The only way Ms. Martinez-Brooks may receive the relief she seeks—a decision from this Court setting aside the OLC Opinion—is by and through this action and this Court's review of the OLC Opinion under the APA.

## CONCLUSION

For the foregoing reasons, Plaintiff Dianthe Martinez-Brooks respectfully requests that this Court deny Defendants' motion to dismiss this action for lack of subject-matter jurisdiction.

---

[9] Plaintiff only raises the arguments related to her CR/RIS motion to highlight the Government's obfuscations and inconsistencies in both of these cases.

Dated: October 25, 2021                    Respectfully submitted,

                                           */s/ Kara Rollins*
                                           KARA ROLLINS (Attorney ID 107002014)
                                           Litigation Counsel
                                           NEW CIVIL LIBERTIES ALLIANCE
                                           1225 19th Street NW, Suite 450
                                           Washington, DC 20036
                                           (202) 869-5210

                                           *Counsel to Plaintiff*

30

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2021, I electronically filed the foregoing Response in Opposition to Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Kara Rollins*
KARA ROLLINS (Attorney ID 107002014)
Litigation Counsel
